UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE A. MIRANDA-RODRIGUEZ,      )      No.  EDCV 06-0051-JTL
                                )
              Plaintiff,        )
                                )
      v.                        )      MEMORANDUM OPINION AND ORDER
                                )
JO ANNE B. BARNHART,            )
Commissioner of Social          )
Security,                       )
                                )
              Defendant.        )
_____)

     On January 17, 2006, Jose Miranda-Rodriguez("plaintiff") filed a
Complaint  seeking  review  of  the  Commissioner's  denial  of  his
application for disability insurance benefits.  On February 1, 2006,
the parties filed a Consent to Proceed Before United States Magistrate
Judge Jennifer T. Lum.  Thereafter, on July 20, 2006, defendant filed
an Answer to Complaint.  On October 30, 2006, the parties filed their
Joint Stipulation.

     The matter is now ready for decision.

///

///

///

**BACKGROUND**

On December 24, 2003, plaintiff filed his application for disability insurance benefits. (Administrative Record ["AR"] at 58-62). Plaintiff alleged that beginning on or about November 20, 2002, he was unable to work because he suffered from the following impairments: lower back pain, numbness in his arms and legs, back pain, neck pain, and lumbar disc disease. (AR at 74). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 22-27, 29-33). On November 2, 2004, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 36).

On July 8, 2005, the ALJ conducted a hearing in San Bernardino, California. (AR at 297-332). Plaintiff appeared at the hearing with his counsel and testified. (AR at 229-307). Lowell Sparks, M.D., a medical expert, and Abbe May, a vocational expert, also testified. (AR at 307-14, 314-31).

On August 25, 2005, the ALJ issued her decision denying benefits. (AR at 13-20). In her decision, the ALJ concluded that plaintiff suffered from the following severe impairments: chronic cervical and lumbar spine strain with degenerative disc disease of the cervical and lumbar spine, mild bilateral carpal tunnel syndrome, and a history of depression with depressed mood. (AR at 15). According to the ALJ, however, none of these impairments met or equaled any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 16). The ALJ further concluded that plaintiff retained the residual functional capacity to perform light work with certain limitations. (AR at 19). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social

1   Security Act.   (AR at 20).

2       On August 25, 2005, plaintiff filed a timely request with the

3   Appeals Council for review of the ALJ's decision.   (AR at 9).   On

4   November 18, 2005, the Appeals Council affirmed the ALJ's decision.

5   (AR at 4-8).

6

7                           **PLAINTIFF'S CONTENTIONS**

8       Plaintiff makes the following claims:

9       1.   The ALJ failed to properly consider all the available

10  medical evidence of record.

11      2.   The ALJ failed to properly consider plaintiff's subjective

12  complaints and properly assess plaintiff's credibility.

13      3.   The ALJ failed to properly consider all vocational aspects

14  and evidence in the case.

15

16                           **STANDARD OF REVIEW**

17      Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision

18  to determine whether the ALJ's findings are supported by substantial

19  evidence and whether the proper legal standards were applied.   DeLorme

20  v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).   Substantial evidence

21  means "more than a mere scintilla" but less than a preponderance.

22  Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.

23  Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.

24  1988).

25      Substantial evidence is "such relevant evidence as a reasonable

26  mind might accept as adequate to support a conclusion."   Richardson,

27  402 U.S. at 401.   This Court must review the record as a whole and

28  consider adverse as well as supporting evidence.   Green v. Heckler,

803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

DISCUSSION

**A.    The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity.  Bowen, 482 U.S. at 140.  At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities.  Id. at 140-41.  Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity.  Id. at 141)  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Id.  If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past.  Id.  If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience.  Id. at 142.  The claimant is entitled to disability benefits only if he is not able to perform such work.  Id.

**B.  <u>Plaintiff's Subjective Complaints and Credibility</u>**

Plaintiff contends that the ALJ improperly rejected plaintiff's subjective complaints and credibility.  Plaintiff alleges that the ALJ failed to give clear and convincing reasons for rejecting his testimony.  Plaintiff also alleges that the ALJ erred in failing to state specifically which testimony she found not credible and her reasons for drawing the conclusions.  Finally, plaintiff contends that the ALJ failed to properly reject the testimony of Eladio Rubalcava, plaintiff's friend, regarding plaintiff's functional limitations.

The ALJ found plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his limitations to be "not entirely credible" and gave such complaints little weight.  (AR at 17, 18).  In support of her credibility determination, the ALJ cited to the "mild nature of the objective findings, the conservative treatment the [plaintiff] has received with no indication that he requires more intensive treatment, and the lack of change in [plaintiff's] condition since early 2003."  (AR at 18).  The ALJ also gave little weight to the testimony of Mr. Rubalcava because his "forms were completed in a remarkably detailed manner similar to those [plaintiff] completed and indicated essentially the same level of functioning and problems [plaintiff] had reported."  (<u>Id.</u>).

In his application for benefits, plaintiff completed questionnaires testifying to his subjective complaints and functional limitations.  In a Pain Questionnaire dated January 8, 2004, plaintiff reported to being in constant pain in his neck and middle and lower back, even while taking medications.  (AR at 83).  Plaintiff further reported that he has to stop an activity one or two minutes after starting due to severe lower back and leg pain.  (AR at 85).  In a

Pain Questionnaire dated January 19, 2004, plaintiff reported the same limitations. (AR at 86-88). In a Daily Activities Questionnaire dated March 26, 2004, plaintiff wrote that his condition keeps him from working because he is unable to move "in any way" without causing himself great pain and becoming angry and depressed as a result. (AR at 111). In a Daily Activities Questionnaire dated April 7, 2004, plaintiff wrote that his condition prevents him from walking, picking up items, moving more than ten pounds, and sitting for prolonged periods of time. (AR at 117). Plaintiff also indicated that he suffers from mental difficulties and a weak memory. (Id.).

At the hearing, plaintiff testified that he alternates between sitting and standing, and must lay down up to two times a day. (AR at 302-04). Plaintiff testified that he cannot walk and sit for very long because his legs become numb, he feels tired, and he experiences intolerable back pain. (AR at 304). Plaintiff further described his inability to hold things in his hands or reach in front of himself. (AR at 304, 306). Finally, plaintiff testified that he suffers from depression and memory problems. (AR at 306-07).

An ALJ need not believe every allegation of disabling pain. See Ortega v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Where an ALJ finds a claimant's claims of disabling pain not entirely credible, and there is no evidence of malingering, the ALJ must set forth legally permissible, specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be 'clear and convincing,' and

supported by specific findings") (<u>citations</u> <u>omitted</u>).  "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  <u>Morgan v. Commissioner of the Social Security Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999).

Furthermore, "[i]t's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."  <u>Dodrill</u>, 12 F.3d at 918 (<u>citing</u> <u>Varney v. Secretary of Health and Human Services</u>, 846 F.2d 581, 584 (9th Cir. 1988), <u>rev'd on other grounds upon reh'g</u>, 859 F.2d 1396 (9th Cir. 1988)).  An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-56 (9th Cir. 1991).

As discussed below, the ALJ's reasons for rejecting plaintiff's credibility do not withstand scrutiny.

### 1.   Mild Objective Findings

The ALJ found that the objective findings and other evidence did not support plaintiff's subjective complaints.  (AR at 17).  First, the ALJ found the objective radiographic and other diagnostic test findings to be generally mild.  With respect to plaintiff's physical impairments, the ALJ found the clinical findings to be variable, ranging from negative to mild in severity.  With respect to plaintiff's mental impairment, the ALJ found the evidence "highly questionable" to establish a medically determinable impairment.  (<u>Id.</u>).  Overall, the ALJ noted that the objective findings were "mild in nature."  (AR at 18).

///

///

An ALJ cannot rely on an absence of disability findings to reject a plaintiff's credibility.  A claimant need not produce evidence of pain other than his own subjective testimony.  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof.").  Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom.  See Smolen, 80 F.3d at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain.").  Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted).  This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Put another way, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Social Security Ruling ("SSR") 96-7p.[1]  Instead,

---

[1] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are, nevertheless given

(continued...)

a claimant must demonstrate only two things: "(1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." SSR 96-7p; see also SSR 96-3p.  After a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of the pain.  Burch v. Barnhart, 40 F.3d 676, 680 (9th Cir. 2005).

In this case, the ALJ gave little weight to plaintiff's testimony regarding the intensity, duration, and limiting effects of his limitations, in part, due to the generally mild objective evidence. (AR at 17).  But once a claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.  Lester, 81 F.3d at 834.  Here, the ALJ explicitly determined that plaintiff suffered from severe impairments of chronic cervical and lumbar spine strain with degenerative disc disease of the cervical and lumbar spine, mild bilateral carpal tunnel syndrome, and a history of depression with depressed mood.  (AR at 15).  Thus, unless there is affirmative evidence showing that the plaintiff is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing."  Dodrill, 12 F.3d at 918.  General findings are

---

[1](...continued)
deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988).

Here, there is a significant amount of objective evidence that could reasonably produce plaintiff's physical symptoms and complaints. The ALJ accurately noted that medical evidence generally indicated mild results. (AR at 140, 165, 229, 230, 250-51, 256, 269, 270). Clinical diagnoses, however, also indicated mild to moderate bilateral carpal tunnel syndrome and moderate degenerative disc disease at C5-6 with mild to moderate bilateral neural foraminal narrowing. (AR at 250, 256, 228). On February 3, 2003, plaintiff underwent a percutaneous discectomy L5-S1. (AR at 284-85). When his condition failed to improve, plaintiff received epidural injections to the muscles in his back on April 1, 2003, April 15, 2003, November 30, 2003 and December 17, 2003. (AR at 278-79, 276-77, 258-59, 153-54). A neurologist opined in 2004 that "[plaintiff's] subjective complaints were consistent with his history of injury, clinical course to date, and objective findings." (AR at 251). The ALJ's reliance on the "mild nature of the objective findings" does not constitute a clear and convincing reason to reject plaintiff's subjective complaints as they relate to the intensity and frequency of his pain. Dodrill, 12 F.3d at 918. Moreover, the ALJ failed to identify what specific testimony was not undermined based on the purported mild nature of the objective findings. Accordingly, the Court rejects the ALJ's conclusion.

///

## 2.    Conservative Medical Treatment

The ALJ also rejected plaintiff's credibility, in part, due to plaintiff's conservative treatment. (AR at 18).  The ALJ wrote that plaintiff "received no indication that he requires more extensive treatment." (Id.).  As discussed below, the ALJ's determination does not withstand scrutiny.

An ALJ may rely on a plaintiff's conservative treatment regimen to reject a plaintiff's testimony of disabling limitations or disabling pain.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). For example, in Fair v. Bowen, the Ninth Circuit affirmed an ALJ's credibility decision where the ALJ stated, among other things, that the claimant received only minimal conservative treatment for his various complaints.  Id.

Here, the ALJ's citation to the conservative treatment that plaintiff underwent fails.  First, the record shows that plaintiff received numerous treatments for his physical impairments, including undergoing surgical procedures on his back.  (AR at 284-85, 264-65). When plaintiff's pain continued to persist, plaintiff received epidural injections in his lower back. (AR at 278-79, 276-77, 258-59, 153-54).   Moreover, plaintiff took numerous pain medications,

1  including Ibuprofen or Motrin,[2] Propoxyphene,[3] Darvocet,[4] and Naproxen,[5]

2  to relieve his symptoms (AR at 79, 83, 86, 209), as well as Vicodin,[6]

3  a prescribed narcotic, for his pain.   (AR at 83, 86, 293).   Thus,

4  unlike other cases in which a court has found that a claimant received

5  minimal or conservative treatment, in this case plaintiff underwent

6  treatment and took medication for his pain over a consistent period of

7  time.  Cf. Fair v. Bowen, 885 F.2d at 604 (claimant had last received

8  physical therapy for his back complaints two years prior and had not

9  been hospitalized for evaluation or treatment of any of his alleged

10  symptoms for the last seven years); Burch, 400 F.3d at 681 (the court

11  affirmed the ALJ's decision to partially discredit plaintiff's back

12  

13      [2]   "Ibuprofen is a nonsteroidal anti-inflammatory drug
(NSAID), which relieves pain and swelling (inflammation). It is
14  used to treat headaches, muscle aches, backaches, dental pain,
menstrual cramps, arthritis, or athletic injuries."  Motrin is a
15  brand name of Ibuprofen. http://my.webmd.com/medical_information/
drug_and_herb/default.htm (search "Find A Drug, By Name" for
16  "Ibuprofen Oral"; then follow "Ibuprofen - Oral" hyperlink; then
follow "Uses" tab).

17  

18      [3]   Propoxyphene is a narcotic pain reliever used to treat
mild to moderate pain.  http://my.webmd.com/medical_information/
19  drug_and_herb/default.htm (search "Find A Drug, By Name" for
"Propoxyphene Oral"; then follow "Uses" tab).

20      [4]   Darvocet is a "combination of a narcotic (propoxyphene)
21  and a non-narcotic (acetaminophen). It is used to treat mild to
moderate pain."  http://my.webmd.com/medical_information/
22  drug_and_herb/default.htm (search "Find A Drug, By Name" for
"Darvocet"; then follow "Darvocet-N 100 Oral" hyperlink).

23      [5]   Naproxen is an anti-inflammatory drug that relieves pain
24  and swelling.  http://my.webmd.com/medical_information/
drug_and_herb/default.htm (search "Find A Drug, By Name" for
25  "Naproxen"; then follow "Naproxen Oral" hyperlink).

26      [6]   Vicodin is "a combination of a narcotic (hydrocodone) and
a non-narcotic (acetaminophen) used to relieve moderate to severe
27  pain."  http://my.webmd.com/medical_information/drug_and_herb/
default.htm (search "Find A Drug, By Name" for "Vicodin"; then
28  follow "Vicodin Oral" hyperlink).

1  pain testimony where plaintiff had not had any treatment for her back
2  in the last three or four months, surgery had never been suggested,
3  and plaintiff had not engaged in any physical therapy).  Here, for the
4  reasons discussed above, the Court finds that the ALJ's rejection of
5  plaintiff's  pain  testimony  based  on  plaintiff's  purportedly
6  conservative treatment was not supported by substantial evidence.

7       **3.    Lack of Change in Condition**

8       The ALJ also rejected plaintiff's credibility, in part, because
9  of a lack of change in his condition since 2003.  Specifically, the
10 ALJ noted that "the medical evidence contains no evidence of any
11 significant  change  in  [plaintiff's]  clinical  findings  or  his
12 symptomology,  and  his  condition  was  found  to  be  'permanent  and
13 stationary'  in  relation  to  his  industrial  injury."   (AR  at  18).
14 Additionally,  the  ALJ  noted  that  the  clinical  findings  reported
15 limitations consistent with a State Agency physician and a medical
16 consultant,  both  of  whom  found  plaintiff  capable  of  light  work.
17 (Id.).

18      The Court finds the ALJ's reason for giving limited weight to
19 plaintiff's subjective complaints based on his stabilized condition is
20 not  supported  by  substantial  evidence.    While  plaintiff  had  not
21 undergone any surgical procedures or epidural injections since 2003,
22 diagnostic testing on May 4, 2005 indicated that plaintiff continued
23 suffered from moderate degenerative disc disease at C5-6 with mild to
24 moderate bilateral neural foraminal narrowing.  (AR at 228).   The
25 State Agency physician, on whose opinion the ALJ relied, determined
26 that plaintiff was capable of light work more than a year prior to the
27 May 4, 2005 diagnosis.  (AR at 170-77).  Similarly, the medical
28 consultant on whom the ALJ relied rendered his opinion on April 19,

1    2004.   (AR at 207).   Thus, the ALJ's rejection of plaintiff's

2    subjective complaints based on plaintiff's stabilized condition is not

3    supported by substantial evidence.

4         **4.   Inconsistent Statements**

5         Defendant contends that the ALJ also rejected plaintiff's

6    credibility, in part, based on inconsistent statements that plaintiff

7    made regarding his daily activities.   The ALJ noted that plaintiff

8    initially testified that he could sit for four hours in an eight-hour

9    day, stand or walk for four hours in an eight-hour day, and drive

10   seventy-five miles.   (AR at 17).   Upon further questioning by his

11   counsel, the ALJ noted that plaintiff added that he needed to lay down

12   for fifteen to twenty minutes once or twice a day.   (Id.).   While the

13   ALJ did not cite this testimony as a reason for rejecting plaintiff's

14   credibility, she did note the inconsistency, which defendant cited as

15   a basis for her rejection of plaintiff's credibility.

16        Internal conflicts in a claimant's statements or testimony

17   support a finding that the claimant lacks credibility.   See Light v.

18   Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (in

19   weighing claimant's credibility, ALJ may consider "inconsistencies

20   either in [plaintiff's] testimony or between his testimony and his

21   conduct"); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.

22   1989) (ALJ can reject pain testimony based on contradictions in

23   plaintiff's testimony).

24        In this case, however, the Court finds that plaintiff's testimony

25   was not sufficiently inconsistent to warrant the ALJ's rejection of

26   plaintiff's credibility.   At the hearing, the ALJ questioned plaintiff

27   about his daily routine:

28             Q:   Okay, what are your – what do you do? What else

```
 1              do you do?  Do you watch TV, do you read, do

 2              you....

 3         A:   I don't like to watch TV too much.  I do eat.

 4              I do try to go out for walks.  There's a small

 5              little hill off of Katia [phonetic] then I come

 6              back and I sit down under the tree and that's

 7              once in the day.  Then I'll go ahead and go back

 8              into my room.  I'll stay a little bit longer,

 9              then I'll also lay down.  After I lay down, then

10              I'll have to get up again, walk around a little

11              bit more, then I'll sit down again.  By that

12              time, it's 10:00 or 11:00 and then I just go

13              ahead and go back to bed.

14         Q:   Okay.  So during the eight hour day, about how

15              much of that time do you sit?

16         A:   I would say about half of the day I'm sitting

17              down and the other half I'm walking around.
```

(AR at 302).  Thereafter, plaintiff was questioned by his counsel, whereby he testified that he needed to lie down for 15 to 20 minutes once or twice a day.  (AR at 303-04).  Thus, although plaintiff stated that he could sit for half the day and stand or walk for half the day, plaintiff initially testified that he needed to lay down at certain periods.  This testimony is consistent with statements he made subsequently when his counsel questioned him.  Accordingly, the Court concludes that the ALJ's decision was not supported by substantial evidence.

///

///

###### 5.  Witness Testimony

Finally, the ALJ rejected the testimony of Mr. Rubalcava on the basis that he completed forms regarding plaintiff's limitations and functioning that were nearly identical to plaintiff's testimony.  As such, the ALJ gave Mr. Rubalcava's testimony no more weight than plaintiff's testimony with respect to plaintiff's functional capacity. (AR at 18).

Where an ALJ discounts a lay person's testimony, he must give sufficient reasons for doing so.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."); Petersen v. Barnhart, No. 05-35496, 2006 WL 3786665, at *2 (9th Cir. Dec. 20, 2006).  One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  Friends and family members who are in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)("Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work.") (citing 20 C.F.R. § 404.1513(e)(2)); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (same).

The ALJ rejected Mr. Rubalcava's statements because they were "remarkably detailed" in a manner similar to the statements plaintiff made in his own forms.  (AR at 18).  The ALJ also noted that Mr. Rubalcava only saw plaintiff once every other week.  (AR at 18).  In

addition to his biweekly visit, Mr. Rubalcava also noted that he spoke with plaintiff. (AR at 98, 119). Given the infrequency of his visits, it was not unreasonable for the ALJ to question Mr. Rubalcava's detailed knowledge of plaintiff's daily schedule, sleep habits, his ability to care for his personal needs, such as bathing and dressing, the frequency of meal preparation, his ability to do yard work, and his shopping habits. (AR at 98-105, 119-27). It is well-settled that questions of credibility and resolutions of conflicts in the testimony are functions solely of the ALJ. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). Accordingly, the Court finds that the ALJ's decision not to give Mr. Rubalcava's statements more weight than the planitiff's statements was supported by substantial evidence.

As discussed above, however, the ALJ's reasons for giving little weight to plaintiff's subjective complaints do not withstand scrutiny. As such, the Court finds that the ALJ failed to give clear and convincing reasons for giving little weight to plaintiff's testimony regarding his subjective complaints.

**C.   Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further

administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000).

Here, the Court finds remand appropriate.  The reasons cited by the ALJ in support of her rejection of plaintiff's credibility are not supported by substantial evidence.  On remand, the ALJ must provide clear and convincing reasons in support of her finding that plaintiff's allegations regarding his limitations are not fully credible.[7]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 30, 2007

_____/s/_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff has raised other claims of error regarding the ALJ's decision, namely, that the ALJ failed to properly failed to properly consider all the available medical evidence of record and the ALJ failed to properly consider all vocational aspects and evidence in the case.  As explained above, the ALJ's error in assessing plaintiff's credibility constitutes sufficient reason to remand this case.  Depending on the outcome of the proceedings on remand, the ALJ should address plaintiff's remaining issues at that time.